## WILL OF REYNOLDS.

*November 21—December 10, 1912.*

*Wills: Construction: Widow's election: Effect on other provisions:
Intestate estate: "Residue:" Vesting of legacies: Stipulation for
distribution contrary to will.*

1. A will, after making certain specific bequests, gave the entire
   residue of testator's estate to trustees to hold for a period of
   ten years "for the purpose of distributing the residue as here-
   inafter provided." It then provided for the division of such
   residue at the end of the ten years, thirty per cent. to his wife
   and smaller portions to other named legatees. The widow
   elected to take under the statute. *Held*, that the renunciation
   by the widow did not cause the thirty per cent. willed to her to
   become intestate estate, to be paid over to the heir at law, but
   it remained a part of the residue disposed of by the will, to
   be distributed among the residuary legatees other than the
   widow.

2. The renunciation by a widow of the provision made in her hus-
   band's will and election to take under the statute should not
   be allowed to disturb the will or defeat the intended disposition
   of his other property, except so far as it necessarily interferes
   therewith.

3. Where the widow so renounces, the "residue" of the estate con-
   sists of the part of the general estate that remains after de-
   ducting debts, specific legacies, and the widow's share; but
   the intention of the testator as to the disposition of it is to be
   gathered from the four corners of the will under the facts and
   circumstances surrounding him.

4. A stipulation made in settlement of a will contest, but not signed
   by a charitable institution which was one of the residuary lega-
   tees, nor by the guardian *ad litem* of the minor legatees, pur-
   suant to which the widow renounced the provision in her favor
   and the legacy given to her was to be treated as intestate prop-
   erty, contrary to the true construction of the will, must be dis-
   regarded and the will carried out according to its terms, except
   as necessarily modified by the widow's election.

5. Under the terms of the will stated above, the gifts to the residu-
   ary legatees must be regarded as vested, and only the time of
   distribution postponed until the expiration of the ten-year
   period.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Af-
firmed.*

Edwin Reynolds died February 19, 1909, leaving surviving him his widow, who was his second wife, and an adopted daughter. His will, executed September 9, 1905, was duly offered for probate. By this instrument he made various specific bequests and provided certain annuities, among them an annuity of $3,000 per year for his wife for a period of ten years. The residue of the estate was disposed of as follows:

"Nineteenth. All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath in trust to *Charles F. P. Pullen, Nellie M. Reynolds* and *Fred W. Niles* of Milwaukee, Wisconsin, to have and to hold the same for the period of ten (10) years after my death, for the purpose of investing the same, receiving the income therefrom, distributing the residue as hereinafter provided, and carrying out all of the provisions of this will; and I authorize and empower them to sell and convey any part of my estate, either real or personal, at any time in their discretion, and to reinvest the proceeds thereof in such income-producing securities as in their judgment will be for the best interests of my estate.

"Twentieth. I direct that my trustees above named, shall before the expiration of said trust, convert all of the property and estate remaining in their hands into money for the purpose of distributing the same among the beneficiaries hereinafter named, and I direct that they shall pay therefrom, and I give and bequeath the said residue of my estate as follows, to wit: To my wife, *Nellie M. Reynolds,* thirty (30) per cent. thereof, to Arthur Fairchild, five (5) per cent. thereof, to *Emma R. Robinson,* five (5) per cent. thereof, to *Dorothy Cunningham,* five (5) per cent. thereof, to Charlotte Smith, five (5) per cent. thereof, to Jane A. Cunningham, five (5) per cent. thereof, to Mrs. Emily Rogovsky, five (5) per cent. thereof, to the *Protestant Home for the Aged* of Milwaukee, Wisconsin, five (5) per cent. thereof, to the Teachers' Pension Fund of Providence, R. I., five (5) per cent. thereof, to the judge of probate of the county of Tolland, Conn., and his successors in office in trust for the purpose of using the income thereof and such portion of the principal as may be

necessary for the maintenance of the Reynolds family burying plot in Mansfield, Conn., five (5) per cent. thereof, to *Myra H. Robinson* of Mansfield, Conn., two and one-half (2½) per cent. thereof, to Edwin R. Robinson of Mansfield, Conn., two and one-half (2½) per cent. thereof, to Winthrop Reynolds, son of John D. Reynolds, of Andover, N. J., two and one-half (2½) per cent. thereof, to G. Osmar Reynolds, Jr., of Pelham Manor, N. Y., two and one-half (2½) per cent. thereof, to *Grace B. Reynolds* of Pelham Manor, N. Y., two and one-half (2½) per cent. thereof, to Mrs. Emma J. Gardner of Mansfield, Conn., two and one-half (2½) per cent. thereof, to Nellie M. Cahoon, two and one-half (2½) per cent. thereof, to Mrs. Harriet M. Bowes, two and one-half (2½) per cent. thereof, to Esther Hoffner, two and one-half (2½) per cent. thereof, and to Susie Johnson, two and one-half (2½) per cent. thereof.

"Twenty-first. The annuity provided in Paragraph II to be paid to my wife, *Nellie M. Reynolds,* during her life, shall nevertheless terminate at the expiration of the trust hereinbefore created, at the end of ten (10) years from my death if she be then living."

*Emma R. Robinson,* the adopted daughter and heir at law of the deceased, filed objections to the probate of the will, alleging mental incompetency in the deceased and undue influence exercised by a brother. The widow renounced the provisions of the will for her benefit and elected to take in lieu thereof the share of the testator's estate as provided by secs. 2171 and 2172, Stats. (1898), under the following stipulation, filed with the court on December 23, 1909:

"It is hereby stipulated and agreed by and between the heirs at law of Edwin Reynolds, deceased, and the legatees and beneficiaries under the last will and testament of said deceased, dated September 9, 1905, and filed for probate in the county court of Milwaukee county, Wisconsin, as follows:

"First. That the objections filed by *Mrs. Emma R. Robinson* to the probate of said will be withdrawn and that said will be immediately admitted to probate.

"Second. That in consideration of the withdrawal of such

objections and to avoid all further controversy and litigation concerning the admission of said will to probate, the widow of said deceased, *Nellie M. Reynolds,* does hereby elect to take the share of the estate of said deceased as provided by law under sections 2171 and 2172 of the Statutes of the state of Wisconsin, which is understood to be a dower interest in any lands of which the deceased died seised, and one third of the net personal estate of said deceased which shall be in lieu of the annuity and legacy provided to be paid to her under said will.

"Third. The legacy to *Nellie M. Reynolds* of thirty (30) per cent. of the residue of the estate having lapsed by reason of her election to renounce such legacy and take the provision allowed her under the laws of the state of Wisconsin, the amount of such lapsed legacy being thirty per cent. of the residue of the estate of said deceased, descends to *Mrs. Emma R. Robinson* as sole heir at law of said deceased, and shall be paid to her as such heir at law by the executors of said will at the time of the payment of the specific legacies and widow's share of such estate, which distribution shall be made as soon as practicable after the expiration of the time limited for creditors to file claims against said estate under the laws of the state of Wisconsin.

"October 5th, 1909."

This stipulation was signed by all the legatees and beneficiaries under the will except the *Milwaukee Protestant Home for the Aged* and the guardian for the minor legatees. The attorney for the *Milwaukee Protestant Home for the Aged* signed the stipulation with the exception of the last paragraph. The guardian *ad litem* filed a statement objecting to the stipulation and agreement "so far as they attempt to announce the law relating to the time when, the manner in which, and the persons to whom disposition shall be made of that portion of the estate renounced by the widow."

February 24, 1911, the attorney for the *Milwaukee Protestant Home for the Aged* and the guardian *ad litem* petitioned the probate court for construction of the will, alleging their "doubt about the proper construction, meaning, and effect of

said will taken in connection with the stipulation and agreement of the widow to take the provision made by law."

The court held it had power to construe the provisions of the will without reference to the provisions of the stipulation, and that the thirty per cent. of the residue of the estate, which under the will was to go to the widow upon the termination of the trust estate, by reason of the widow's election to take the provision made for her by law remained part of the residue of the estate and was to be distributed at the end of the trust period as provided by the will.

On appeal to the circuit court the judgment of the probate court was affirmed except as to the payment of a small annuity and the distributive shares going to each residuary legatee, and as so modified the judgment was approved. The modifications made by the circuit court are immaterial to this appeal, except that the circuit court held that the vesting of the interests in the residue, which was to be distributed at the end of the trust period, was postponed until that time.

This is an appeal from the judgment of the circuit court.

*A. C. Umbreit,* for the appellant *Emma R. Robinson,* contended, *inter alia,* that the heir is not to be disinherited except by express declaration or devise or by necessary implication from the testator's language. *Anderson v. Wilson* (Iowa) 136 N. W. 134, 139; *Bond's Appeal,* 31 Conn. 183; *Reck's Appeal,* 78 Pa. St. 432; *Bowker v. Bowker,* 148 Mass. 198, 19 N. E. 213. A residuary bequest which fails or lapses for any cause, and is not otherwise disposed of by the will, becomes intestate estate and descends to the heir. *In re Bradley's Will,* 123 Wis. 186, 101 N. W. 393; *Harrington v. Pier,* 105 Wis. 485, 498, 82 N. W. 345; *McHugh v. McCole,* 97 Wis. 166, 177, 72 N. W. 631; *Will of Adelman,* 138 Wis. 120, 125, 119 N. W. 929; *Beekman v. Bonsor,* 23 N. Y. 298; *Kerr v. Dougherty,* 79 N. Y. 327; *Booth v. Baptist Church,* 126 N. Y. 215, 245, 28 N. E. 238; *Lyman v. Coolidge,* 176 Mass. 7, 9, 56 N. E. 831; *Dresel v. King,* 198 Mass. 546,

85 N. E. 77. It is entirely competent for legatees under a
will to enter into contracts with each other in regard to their
respective interests under the will, and, where their claims are
conflicting, to compromise them. *Hatcher v. Cade,* 55 Ga.
359; *Wilkins v. Hukill,* 115 Mich. 594, 73 N. W. 898;
*Ford's Estate,* 185 Pa. St. 420, 39 Atl. 1106. The agree-
ment of all the legatees binding their respective interests is
a valid consideration for the agreement of each. *Steinway
v. Steinway,* 163 N. Y. 183, 57 N. E. 312. Legatees may
agree to any division of the property devised to them that they
see fit. If all the legatees are of age and the agreement is
not vitiated by fraud, accident, or mistake, the division will
bind all. And if some are minors, and they ratify it on com-
ing of age, all are bound, and the title of each to the several-
ties so divided and set apart is perfect. *Brewster v. Demar-
est,* 48 N. J. Eq. 559, 23 Atl. 271; *Foote v. Foote,* 61 Mich.
181, 28 N. W. 90; *Hatcher v. Cade,* 55 Ga. 359. Such an
agreement between legatees by way of stipulation will be en-
forced against the individual interests of those who join
therein, and the omission of one of the legatees to sign the
agreement will not invalidate it against those who did sign.
*Woodward v. Woodward,* 16 N. J. Eq. 83.

*Edgar L. Wood,* for the executors and appellants, to the
point that the thirty per cent. of the residue renounced by
the widow became intestate estate, cited the following addi-
tional authorities: *Ford v. Ford,* 88 Wis. 122, 59 N. W. 464;
*Burnet's Ex'rs v. Burnet,* 30 N. J. Eq. 595; *Witherspoon v.
Watts,* 18 S. C. 396; *Sawyer v. Freeman,* 161 Mass. 543, 37
N. E. 942. He also contended that the stipulation should
be sustained as to the interests of those who signed it, citing,
among other cases, *Will of Dardis,* 135 Wis. 461, 115 N. W.
332; 40 Cyc. 2107; *Bailey v. Wilson,* 21 N. C. 182; *Smith
v. Smith,* 36 Ga. 184; *Turner v. Campbell,* 59 Ind. 279;
*Stevens v. Clough,* 70 N. H. 165, 47 Atl. 615; *Steinway v.
Steinway,* 78 N. Y. 418, 37 N. Y. Supp. 742; *S. C.* 157 N.
Y. 710, 53 N. E. 1132.

*Thomas L. Kennan,* for the respondent *Milwaukee Protestant Home for the Aged,* to the point that the widow's renunciation did not have the effect to make her share of the trust fund intestate estate, cited *Lewis v. Sedgwick,* 223 Ill. 213, 79 N. E. 14; *McMurphy v. Boyles,* 49 Ill. 110; *Requa v. Graham,* 187 Ill. 67, 58 N. E. 357; *Dunshee v. Dunshee,* 251 Ill. 405, 96 N. E. 298, 299; *Marvin v. Ledwith,* 111 Ill. 144, 149; *Blatchford v. Newberry,* 99 Ill. 11, 62; *Isenhart v. Brown,* 1 Edw. Ch. 411, 413; *Carper v. Crowl,* 149 Ill. 465, 469, 36 N. E. 1040; 2 Scribner, Dower · (2d ed.) 527; 2 Williams, Executors, 669.

*William W. Wight,* guardian *ad litem* for the minor residuary legatees, respondents, contending that the part renounced by the widow was not thereby taken out of the trust, but remained therein to be sequestered for the benefit of the disappointed legatees, cited among other authorities: 2 Story, Eq. Jur. (13th ed.) 423; 1 Woerner, Am. Law of Administration (2d ed.) p. 273; *Jennings v. Jennings,* 21 Ohio St. 56; *Dean v. Hart,* 62 Ala. 308; *McReynolds v. Counts,* 9 Gratt. (Va.) 242; *Levengood's Estate,* 38 Pa. Super. Ct. 491; *Evans's Estate,* 150 Pa. St. 212, 24 Atl. 642; *Maskell v. Goodall,* 2 Disn. 282; *Sarles v. Sarles,* 19 Abb. N. C. 322; *Russell v. Wright,* 133 Wis. 445, 113 N. W. 644; *Jones v. Knappen,* 63 Vt. 391, 22 Atl. 630; *Latta v. Brown,* 96 Tenn. 343, 34 S. W. 417; *Plympton v. Plympton,* 6 Allen, 178; *Hinkley v. House of Refuge,* 40 Md. 461; *Hoskins v. Hoskins,* 43 Iowa, 452; *Hauk v. McComas,* 98 Ind. 460; *McCallister v. Brand's Heirs,* 11 B. Mon. (Ky.) 370; *Roe's Ex'rs v. Roe,* 21 N. J. Eq. 253.

SIEBECKER, J.   The controversy presents the question: What disposition was made by the testator of the thirty per cent. of the residue of the testator's estate which by the provisions of the will he bequeathed to the widow? The widow renounced this bequest by electing to take the provision made for her by law.   The appellants contend that the effect of the

widow's election is that the portion of the estate so bequeathed to her becomes undisposed-of property, and passes to the testator's adopted daughter as his heir at law; while the respondents assert that the provisions of the will show that the testator intended this portion of his estate to be a part of the residuum specified in the will, and that it passes to those persons whom he designated as residuary legatees. The trial court held that the portion of the residue bequeathed to the widow remained part of the residuum and passed to the residuary legatees after the widow dropped out of this class. The controlling inquiry is: What disposition did the testator make of this portion of his estate? It is urged that by his will he specifically limited this bequest to his widow and that by her renunciation thereof there is a failure of disposition of it, and hence that it devolves as intestate property. If the testator intended that the residuary legatees, other than his widow, should receive the residuum, including the part she was to take under the will, that solves the inquiry and fixes the disposition thereof. We are of opinion that it is manifest from the provisions of the will that the testator intended that the residue of his estate, as fixed by his will, should go to the residuary legatees generally, without restriction of a particular part thereof to each one. Approaching the situation as the testator did, it is clear that he considered the persons who were to be the objects of his bounty under three classes, namely, those upon whom he intended to bestow specific bequests, then his widow, and finally the class which was to receive the residuum; and he parceled out his estate with this in view. It also appears that it was his definite purpose and object that no part of his estate, except a small portion of the residuum, should go to his adopted daughter, and that no part of his estate should devolve as intestate estate. The scheme of intrusting and bequeathing the residue of the estate to the three selected trustees, who were to hold the property for ten years and then distribute it as directed, is per-

suasive evidence of his intent that the residuum was to belong generally to those whom he selected as residuary legatees, and to that end he invested the trustees with extensive powers of management and control over the same, with directions to hold the accumulations thereof for ten years, after converting all of the residue into money, "for the purpose of . . . distributing the residue as hereinafter provided," among his beneficiaries. It is significant that in dealing with the residue the testator treated it throughout as a separate quantum of his estate, which should be held for a period of years for the purpose of distributing it among the residuary legatees, and that this scheme appealed to him as the best legal means for gathering and holding this residuary estate for those whom he designated as its beneficiaries. The fact that the widow renounced the benefits he conferred upon her as a residuary legatee does not disturb the will of Mr. Reynolds except in the particular provision intended for her, and cannot operate to defeat the intended disposition of his other property, unless her renunciation necessarily interferes therewith. Appellants lay much stress on the case of *In re Bradley's Will,* 123 Wis. 186, 101 N. W. 393, as applicable to and controlling the instant case. The principal question there considered was how to ascertain the residue of the testator's estate; his wife, to whom was bequeathed a part thereof, having predeceased him, and his second wife, who survived, having demanded the one-third of his estate to which she was entitled under the law. This court there held that, under such circumstances and under the provisions of the will, the testator used the word "residue" in the sense in which it is commonly employed, and that the "residue" of the testator's estate, under these conditions, consisted of the part that remained of the general estate after deducting the debts and the widow's legal share. This rule for ascertaining the "residue" is to be applied here, but the case in no way aids us to ascertain what disposition Mr. Reynolds made of the residue

of his estate by the provisions of his will.  That intention must be gathered from the four corners of the instrument under the facts and circumstances surrounding him.  We are persuaded that he intended that the whole of the residuum of his estate should go to the residuary legatees, and that no part thereof should under any circumstances become intestate property.  While the widow's renunciation may affect the quantity of the residue, it cannot affect his disposition thereof, and it must be held by the trustees for the purpose of distributing the same among the beneficiaries he designated, that is, the residuary legatees after the widow dropped out.

In view of this disposition of the property under the will, it must follow that the stipulation of the parties for a distribution of the estate contrary thereto must be disregarded, and that the executors and trustees must carry out and execute the will in accordance with its terms.  *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice: Cowie v. Strohmeyer,* 150 Wis. 401, 136 N. W. 956.

The trial court held as a conclusion of law that the residuary legatees under the will did not take a vested estate in the property constituting the residue and held in trust for their benefit, and that their interests would not become vested until the period of the trust expired and the time for distribution arrived.  The will gives the property to the residuary legatees, subject to the trust for the period of ten years, free from conditions or contingencies which might defeat the gift or terminate their right thereto when the trust expired.  As declared in *Ohse v. Miller,* 137 Wis. 474, 119 N. W. 93:

"The gift will be held to vest, if such appears to have been the testator's intention, even though it be expressed in a mere direction to pay. . . . The real inquiry is whether the element of time is annexed to the gift itself as a condition precedent or merely to the payment of it."

It is obvious from the context of the will that the testator intended by the words used to make a present grant and to

postpone the distribution thereof to the time when the trust expires. *Williams v. Williams,* 135 Wis. 60, 115 N. W. 342; *Will of Prasser,* 140 Wis. 92, 121 N. W. 643.

There is no reversible error in the record.

*By the Court.*—The judgment appealed from is affirmed.

A motion for a judgment for costs, including a reasonable sum for attorneys' fees, to be paid out of the estate, in favor of the *Milwaukee Protestant Home for the Aged* and against the executors, was denied January 28, 1913.